May it please the Court, in this case erroneous jury instructions given at trial require reversal. I don't intend this morning, unless the Court adds specific questions, to repeat the arguments in my brief, except cursory. Instead, I want to highlight certain aspects and amplify certain aspects of the argument in the cases that were cited in the brief. I intend to proceed this way, to discuss error in giving instructions number 8 and number 15 that contain the overriding justification defense, and move on to the error that we claim happened in not adequately informing the jury about the sources of the public policy of the State of Washington that protected Mrs. Carsey from discharge. And then finally, I will turn to why those errors were not harmless in this case and instead require this Court's reversal. The jury instruction number 8 and number 15 contained a defense that we've been calling the overriding justification defense. That is a defense that was first enunciated in the Loomis v. Gardner case, but it has not been really fleshed out by decisions of the Court since Gardner, at least of the Washington Supreme Court. And I submit to you that the issue you have before you is one of first impression in the State of Washington. One question I have with regard to instruction 8 is that that is not the Court stating what the law is. Instruction 8 is stating what the contentions of the parties are. So why are we concerned with 8? I'm concerned with both 15 and 8. And, Your Honor, 8, I agree with you, is that's a contention of the parties. But I argued in the brief and I'm arguing this morning that there were two reasons why that contention should never have been in front of the jury of overriding justification. One, that that issue is an issue of the law for the Court to decide whether the existence of that. My question is limited. I'm just wondering why we're not just really concerned with 15 because 8, when the Court is just saying what the parties contend, is not announcing what the jury should consider as law. I agree, Your Honor. But I also think it should not have been a factual issue in the case and there should have been a limiting ruling on that. But I agree with you that the misstatement of law is really affirmatively stated in the elements, the affirmative defense element in Instruction 15. Quickly, the instruction is inconsistent with a long string of cases in Washington. The Wilmont case is cited in the brief. Loomis, Lynn's. Loomis and Wilmont being Washington Supreme Court cases. Lynn's being a court of appeals case. And the little case, which is the Ninth Circuit case, part of that case was during Washington public policy tort claims. And I want to explain why the affirmative defense of overriding justification is a legal issue and only should be used in rare cases and how that is inconsistent with Wilmont, Loomis, Lynn's, and Little. In Wilmont, and I don't want to go over it too much because it was in both briefs, but the court in 1991, I believe, rejected any kind of causation element for Washington tort claim, public policy tort claims that would be a determining factor or any sort of but-for test. And the reason it did that was because Washington law differed from some other jurisdictions and from federal law under the First Amendment in that the purpose of the public policy tort was to ensure enforcement of the public policy even against employers who had mixed motives. And they said that very clearly in Wilmont. They wanted an employer not to escape because they had another legitimate factor that was also a motivating factor. The court revisited Wilmont in a companion case decided the same day, Allison, which is briefed, applying that same rule to a retaliation discharge under state anti-discrimination law. And then a few years later in McKay, again revisited both Allison and Wilmont in applying the same factor to a disparate treatment discharge or case under Washington law against discrimination, saying at bottom of all those cases was this intent by the courts and the legislature to hold employers accountable even when they had a legitimate motive that also motivated the defendant. But taking, it's obviously a little bit different now because there have been amendments in the federal law to Title VII and this mixed motive and actually there's a case before the Supreme Court now taking a look at that. On the Instruction 15, I take it that the first three numbers there you think are an accurate statement of... First three numbers. Instruction number 15, it tells you why you have to prove protected speech, substantial motivating factor, and then it says that it jeopardized or contravened public policy. Those you agree with? Those I agree with, yes. Number four talks about this burden shifting to the town, and that is that the defendant would then have to prove a legitimate non-retaliatory reason. And are you in agreement with that statement? No, I accepted the paragraph four also, Your Honor, which is cited in the brief. Because it was combined with the overriding justification, certainly the defendant... Let's just say it was by itself. Well, then it improperly placed the burden on the defendant because it's not on the defendant. The plaintiff does carry the ultimate burden of persuasion on the substantial factor test. So that was wrong. But it was particularly wrong for my case. Because it was four and five together. Yeah, together. It's an and, not an or thing there. Anyway, go ahead. It would seem that it would be favorable to your client to require that the defendant's justification be overriding a reason. Right. And I agree, Your Honor, and I agree it's an affirmative defense. I'm the one who advocated that position in the jury instruction conference. However, it's not an instruction that should be given in every case. And it's up to the court to do some gatekeeping about whether that's available defense. And I'd like to turn to Gardner v. Loomis real quickly to say why the Gardner case really explains that. In the Gardner v. Loomis case, there was some pretty extraordinary facts. We had an armored car driver running out of his armored truck to save a bank employee at knifepoint, right? And so the employer defended by saying, well, our work rule about not leaving the truck isn't just a regular work rule. It's to save lives, too. And so we have saving lives versus saving lives. And the court said, well, gosh, this is different than any other case we've ever had. They said, no other case has the employer offered an interest to counterbalance the public policy the plaintiff has brought forward. That alone ought to tell you that all of those cases decided before, where the employer asserted a legitimate business reason, non-retaliatory reason, on causation, isn't enough to show overriding justification because they said, we've never faced this before. Then, carefully, the court said, okay, we're going to adopt Professor Parrott's four-part test. And actually, Professor Parrott's work had been involved in that earlier. Thompson case, Professor Parrott has been approved over and over by the Washington Supreme Court. But they said, we're going to modify the test a little bit. We think we need to bring some order to our house on the elements. And they separated clarity from jeopardy, and they added this defense. But they said very specifically, Wilmot doesn't change. Causation law in the state of Washington does not change. And the cite for that is in the brief.  And on the causation element said that the plaintiff had raised an issue of fact, that that was in dispute. And so that issue had to go to the jury because the plaintiff said, I jumped out of the truck to save somebody's life. So they were saying the reason, Gardner was saying the reason he was fired was because he went to rescue somebody. Loomis said, no, it was just a work rule. So they said causation went to the jury. But then they turned to the competing policies, the plaintiff's public policy that he articulated protected his conduct and the rationale of the societal interest Loomis said was embodied in its work rule. There were several public policies that Gardner went through. I only want to talk about two. One was the Good Samaritan policy. And the court said, yes, that's implicated here. And did the balancing with Loomis' save the drivers and said, okay, we think that saving the drivers could be an overriding justification because the Good Samaritan doctrine isn't strong enough to override that. Then they turned to a different public policy. The plaintiffs articulated this rescue doctrine, rescue people from death, self-defense, defense of others. And the court looked at how that's been used in criminal law as a defense, how it overrides a number of other laws. And so that is a stronger public policy. So that public policy overrides the societal interest of public policy. Loomis is articulating, is embodied in its rule and said that the plaintiff won on that issue. Obviously, they engaged in that legal balancing test after having determined that causation was a factual issue. Those are separate elements, very separate elements. And the court should not instruct on an overriding justification defense unless the court first does its work, its job in weighing those two competing public policies. If it wasn't clear to you. This would have worked. I mean, obviously, the trial judge was trying to wrestle with these cases. Right. So how would this have worked? And when would it have happened? And how would it have changed the jury instruction? Well, unfortunately, in this case, I don't think either party understood that the judge intended to give this overriding justification defense until a few days before the jury went out. And so we tried to educate the judge about that. And it's my contention that the record that was developed at trial really didn't support a factual basis for that affirmative defense either. But, you know, the Lynn's decision, the Court of Appeals decision is informative to your answer to your question, I think, Judge McCown, because they took the test and they said, you know, this is summary judgment, but we're going to reorder the Gardner test a little bit, and we're going to move the affirmative defense up before causation because the clarity element is an issue of law. The jeopardy element is sort of fact and law, but mostly fact. The affirmative defense, they said, is an adjudicative fact. It's a question for the court, and they cited an old case, Wymans, about what adjudicative fact meant. And what it said there was what we're talking about here is, in that case, it was should we continue this tort of spousal, interference of spousal relations or whatever. And the court said this is a matter of policy. The court has to decide this. So in Lynn's, they said, okay, before we even get to causation, we have to decide whether there was an overriding justification. So they said it was an adjudicative fact. Counsel, I'm really following your argument as to why this hurt this particular plaintiff, because the city had the right to put on evidence that they had a legitimate reason for firing her, and that's why they fired her. Now, the court goes on then and says, but that's got to be really an overriding reason to override the policy, which is the first amendment of the policy. It seems to me it helps your client rather than hurts her. I just feel all this maze and this discussion and this and that doesn't get me there. Your Honor, I didn't object to the overriding. I would not have objected to an overriding justification defense if one were available on these facts. Well, but in effect, the court is saying you've got to decide that just firing her because she didn't necessarily keep her books in order overrides the other. All right. And that would be error in Washington because, as the Wilmot case says, the fact that a defendant has a legitimate interest in firing the employee as well doesn't exculpate them from liability. They're still liable. And if I can point out the difference, the plaintiff also had a first amendment case with the Mount Healthy defense, and she lost that case, and I think she lost it, not because the jury didn't believe that her conduct was a motivating factor in her discharge. Their questions about the defenses and jeopardy make me think they'd gotten that far on even the first amendment issue. But rather, Mount Healthy defense is a but-for test. And so the jury must have concluded they would have fired her anyway, and so she lost her first amendment case. But that Mount Healthy test is completely inconsistent and conflicts with the Wilmot test, which says any time there's a mixed motive, the plaintiff still prevails. And only in these rare circumstances, which were not presented in this case, could an affirmative defense be utilized to overcome that liability. And I guess, you know, this is maybe where I thought the whole – I didn't understand your argument completely. I was trying to look at it as an employment case based on a public policy discharge. So the question I had is whether – what is an affirmative defense in that kind of a case? Because if her first amendment conduct was a factor, I guess under Washington's Supreme Court, a substantial factor, then is the employer held liable under the mixed motive? Yes. So – And there's no Mount Healthy type defense to that. So what you're saying then is that really there's no – even number four and five, both of them are out here because it's basically a mixed motive case, and if you carry the burden, you win. That's right. There's no defense. You can't get out of it. Absolutely right, Your Honor. However, we have to reconcile that with Loomis. Yeah, and what I'm saying is Loomis said that overriding justification defense is only available in very limited circumstances, where the employer comes up with a significant policy, societal interest, and to override the public policy of the plaintiff. And let me quickly, because I know I'm running out of time, and I'd like to reserve a little. Yeah, but I guess I thought it might be a little different, because there they said, we did fire the guy, and this is the reason we fired the guy, because he jumped out of the armored car truck. And here, I mean, there was only one reason that they fired him. Well, the court said, was the reason he jumped out of the truck or the reason because he was going to save somebody? No. I mean, the causation element was contested, and the court found it was contested. Okay. So you would say that there is no affirmative defense, that if one, two, and three are established, that should have been the end of the instruction? Yes, Your Honor. That's my argument. That sure doesn't comply with what St. Regis said, because it's clear at St. Regis that there's an affirmative defense. If you can show from another, for example, of what was said there, however, once the employee is demonstrated that his discharge may have been motivated by reasons of contravening a clear mandate of public policy, the burden shifts to the employer to prove that dismissal was for reasons other than those alleged by the employee. There is an affirmative defense. Well, Your Honor, I think that's what Thompson v. St. Regis says, but that's kind of a loose language talking about the burden of production and not the burden of persuasion, and I don't think there are any cases. What's the use of production if it has no effect on persuasion? Well, the plaintiff in a public policy court claim in Washington carries the ultimate burden on that issue, and I know that that language is in there, but, you know, there used to be a lot of bad language about the shifting burdens. If I could just have a second. In Loomis, did they say that still the same rules apply? This is a very unusual situation. They're not changing the whole pattern. They did not, but causation was a plaintiff's burden of proof. I think what you're trying to say is that the plaintiff still has the burden to show that it's a substantial motivating factor. That's right, substantial factor. Or substantial factor. And what happens then when the defendant puts on evidence, no, it's the timesheets and showing up and the money and that sort of thing? That has to undermine whether that goes to whether it was really a substantial factor. It does. It's an issue of the causation and whether there was, if one of the motives was the illegal motive, even though the defendant has proven it had a legitimate motive, then the plaintiff still prevails. If you read those Wilmont, Ellis, and McKay cases, you'll understand that, I think. And Washington, I want to point the court out that the Smith decision that's cited in the case cites to Thompson, and they reject. Let me ask another question. This is a mess, okay? You've got the Washington Supreme Court, you've got the Court of Appeals. It's an important issue. Is this an issue that should be certified to the Washington Supreme Court? Well, you know, I've thought about that, Your Honor, and as I said, it came up late in trial. There's no opportunity there, and this is a case that's been up here twice on appeal, and delaying is not in my client's interest, I don't think. The other thing is I've read very learned opinions by all three of the judges in front of me about mixed motive cases and burdens of proof, and I think you're quite able to divine Washington law. And so I'd rather it was not certified, but, you know, I mean, that's certainly up to you if you folks want to do that. Did you offer counter-instruction to this? I think it was Supplemental 4, Your Honor. It cited in the brief what was offered. And I know I'm in negative time, but I'd like to point out the Smith case. I'm going to hear from the town of Wilkinson. Okay. Good morning. My name is Michael Tierney. I represent the town of Wilkinson in this case. My temptation is to jump right into some of the things that you're asking questions about, but I do want to state a couple of what I think are more or less overriding considerations. The point in this first challenge as to whether there's an error in the instruction is whether the instruction accurately states the law. And the problem here, as Judge Bryan said, isn't with the statement of the law in the instruction. It's with the difficulty of the area of law. It accurately states a difficult area of law. There's no error in the instruction. Instructions in this case, when taken as a whole, allowed both sides to argue their theory of the case. And that's really the bottom line in considering jury instruction issues. The point came up, and this is important in this case, the defense prevailed on the Section 1983 claim, the free speech claim. And that necessarily involved one of two findings by the jury. First, either the speech was not a substantial or motivating factor in the dismissal, and that element is essentially identical to the test in the public policy, or the plaintiff would have been terminated anyway. And to the extent the, and this is important, because to the extent the plaintiff is arguing that, well, there should have been some sort of threshold legal decision, and this is in the plaintiff's brief, and they say this very clearly, what there should have been is a threshold legal decision as to whether this was, met the category for an overriding justification. And then it should have gone to the jury to ask if that was actually the motive in the termination. Well, we've already got the result from the jury as far as the motive in the termination. She would have been fired anyway. So either that or we don't even get that far because it wasn't a substantial or motivating factor. So the impact of the Section 1983 decision in this case is important, especially if we get to the point where we're asking whether there's any prejudice here. Well, it's important depending on what the law is, and so let me explain why that is. If in a mixed motive case you can win by showing that a substantial factor was the First Amendment, and the defendant doesn't have a get-out-of-jail-free card by showing, yeah, I would have fired her anyway, then it would matter. So it seems to me it brings us back full circle to what's the law in Washington on a mixed motive case with a public policy component. That's what I want to get to because the point, what I'm trying to do is highlight what appears to be the fundamental point that the plaintiff is making here, is that there should have been a ruling as a matter of law that all of these things that the city believed that the plaintiff was doing wrong, losing track of public funds, losing track of people's bail money, risking people's arrest for tickets that they'd already paid, not getting them in trouble with the state auditor. The plaintiff's core position is essentially that that isn't enough. Those aren't sufficient reasons to overcome any public policy. And there's no law in Washington to support that proposition by the plaintiff. And I'm going to get to the detail on that. But what we're ultimately going to end up with is either as a matter of law these aren't sufficient, or if they are sufficient as a matter of law, then that gets processed through a different analysis than the mixed motive analysis in a Section 1983 claim or a Title VII claim. It gets processed through this factual determination as to whether that was an overriding justification by the employer. I think both tests can get to the same point, but they have to both jump through different hoops to get there. And what I want to say is my third overriding point on this, and this is really important, the question was raised, did the plaintiff ever submit an instruction on this? The answer is no. There was never an instruction submitted by the plaintiff on the overriding justification theory. So that means... No, but I think that the reason is because proposed instruction number four lays out what the plaintiff thinks are the elements of a violation of public policy. And those elements are incorrectly stated. There's no doubt that there's four elements in the state of Washington, and there's not a single instruction by the plaintiff that sets out those four elements. What are the four elements? Clarity, jeopardy, causation, and lack of overriding justification. That's in the Loomis case, and that's in every case that's been decided since then. And there's not a single instruction from the plaintiff that lays those out. And I believe it's a fundamental of jury instruction cases that it's not enough to simply attack the instruction that the other side offered. If your instruction is also incorrect, you don't get anywhere. And obviously the court will struggle. Well, that's not true. What's the court going to do then? Well, the court's job is to figure out the law. The party's job is to present the proposed instructions. Both of them can be wrong. The court has to figure out the law. So it seems to me both sides have preserved their objections here. But we need to figure out, and this is the hardest thing because of these cases, I think we need to figure out whether in this public policy case, is it like a regular mixed motive case where the defendant doesn't have a complete defense or is it something different? Well, I think you're jumping ahead to this question of whether or not there has to be a threshold test before the defense can even assert a overriding justification defense. Well, I don't know. I mean, that's why we're asking you what your view is. I want to point out, I mean, that's the core of the plaintiff's position. And I want to, this case we cite in our brief link-up case. It's a Washington Court of Appeals case. And I want to use that as a starting point for my discussion here, that this notion of this doctrine of the plaintiff's, that this is a really rare event, that you have to pass this threshold test. First of all, the plaintiff never asked the court to make a threshold test ruling on this. They never objected to this on the basis that the court hadn't gone through this initial test. And, again, I apologize for jumping around, but there's so many different parts to this argument. The plaintiff's answer on that was, well, we didn't know until the last minute that this was going to be in the case, and that's simply false. It's simply not a true statement. The proposed contested jury instructions, which we started drafting three weeks prior to the trial, the defense, and this is at ER 0784, the defense proposed jury instruction number 25, specifically sets out the overriding justification defense. We raise overriding justification as a defense in our trial brief, and that's in ER 0777 and 0778. So this is an issue in the case that the plaintiff doesn't even submit a jury instruction on. And I don't have the site handy, but I know that it is in the Fifth Circuit, and I thought I'd look real quickly for this point this morning, and I could cite the court to sections 2554 through 2556 of Wright and Miller, that a party that is attacking an instruction has to offer its own correct instruction on that point, and that's the only court case I pulled out was a Fifth Circuit case, Schweitzer v. Advanced Telemarketing, that's 104F3rd761, that the plaintiff has to offer an instruction on this point. We don't know what the correct instruction is at this point. Well, let's talk about the blanket case. What I need to understand from you is, and maybe the blanket case will explain it, is what are the elements, and where does the defendant fit in in terms of complete defense? It's exactly as stated in the instruction. If those first three items are met, then the defendant has to step forward with proof of an overriding justification for the termination. And in Blinka, and what's important about this case is how parallel it is to this, this was an employee of the Washington State Bar Association who was, again, it was a testimony case or an involvement with a testimony case, similar to Mrs. Carsey, a little bit different. This person was subpoenaed to testify at a deposition. Her employer didn't like what she said at the deposition. She was later terminated. Her argument was, I was terminated because of what I said at the deposition. The employer said, no, you were terminated because you weren't doing a good job and various other reasons. The court addressed that. Blinka is 36P3-1094. Blinka addressed that at page 1101 and was critical of the instruction that the court gave because it combined an instruction on the Washington law against discrimination with the instruction on the public policy tort. But it said that, nonetheless, the instruction was sufficient. Because it was sufficient to allow the jury to evaluate the reasonableness of the WSBA's justification for its decision regarding Blinka's employment. Now, what is this threshold level that in Blinka was important enough to qualify as an overriding justification? The plaintiff wants to make it sound like it's some lofty, powerful public policy, and it's not. And that's not what Professor Parrott says, and I'll get to Professor Parrott in a minute. But what the court of appeals said in Blinka, as far as what the defendant had offered as the reasons for terminating her, these are the powerful public policy reasons. She was totally withdrawn from any involvement in the department. She stopped participating. Her attitude had a negative effect on morale within the department. Now, that was sufficient to allow the court to let the defense present the affirmative defense of overriding justification. You have an added factor here that, in some ways, your justification also has public policy ramifications because it relates to, obviously, her ability to or the city's ability to operate. It's like public policy versus public policy. The city's case is much stronger. I think any excuse that a public employer has to terminate an employee is, by nature, a public policy. The conduct, the performance of public employees in their jobs is a public policy. It's a responsibility of government to ensure that the government is run efficiently. Would you view the four and five in the instruction that was given as being sort of combined in number four? That was Merritt's suggestion that was adopted in Loomis. That is that you have a legitimate, non-retaliatory reason for termination, and it also has to be a justification that's sufficient to override the public policy. That seems somewhat the same as number four, which the defendant must not be able to offer an overriding justification for the dismissal. That was the point of that. The two are combined. Right, and it was broken into two, and we struggled with that. But it was because Wilmot seemed to use some different language, and we wanted to make sure we covered the burden-shifting aspects of Wilmot in that it's still, because Loomis said we haven't changed the law, and there's Wilmot saying the defense has to come forward with, and this is in the analysis of the causation element, the defense has to come forward with a proof of a non-discriminatory or a proof of another reason. So we wanted to make it clear, and I believe it added to the burden of the defense. I mean, there's no error there when it adds to the burden of the defense and we still prevail. But we were struggling with it because the cases in Washington were not poured into a single formula, partly because of that language in Loomis that we haven't changed anything, and we were trying to incorporate what Thompson said about the employer can step forward with a reason that contradicts what the plaintiff says the excuse for termination was. If we were to determine that there isn't this threshold aspect to the public policy, but we were also to determine that this isn't an accurate statement of the law because it lets the defendant get out on certain grounds, would it still be harmless there because you had to prove more than you necessarily should have? Yes, I think so. I don't know how this could not be a correct statement of the law. If the court were to say this is an incorrect statement because we get out, then basically it eviscerates the overriding justification element. And it's important to point out, and I'm going to cite a couple of cases on this, that there's a very, very close connection between the causation analysis and the overriding justification analysis. These aren't two entirely separate sets of facts that apply to each one. And there are several cases where the court, one way or the other, in discussing causation and in discussing overriding justification, has made it clear that we're talking about the same facts here. And it's important to realize that there are two different elements of the claim being considered. The causation element is simply does the plaintiff's allegation of this bad motive reach a certain level? It doesn't have to be the but-for level. Does it reach that level? That's all the plaintiff has to establish. But I think it's false to say that that's all the plaintiff has to establish completely because otherwise, like I said, you eviscerate the overriding justification element. In Washington, if the defendant comes forward with an overriding reason, it doesn't change whether the bad motive reaches the necessary level. It just moves the analysis forward a couple steps. And it moves the analysis forward, in this instance, to the overriding justification. Is the defense, the reasons that they put forward, is that an overriding justification for the termination? Once the defendant proves that, is there anything more? Does the plaintiff have the case that they can come back on at that point? It appears to be over at that point. And I'm running out of time because I wanted to get to what Professor Parrott said about this. Well, I'll just say that we cite it in our brief. He doesn't say this is some enormous burden that has to be met. He describes the scales of justice and says we start off with the plaintiff has desire for the job. The defendant controls the workplace. The plaintiff may have a reason for a public policy reason for termination, but we have the at-will employment on the other side. So if the plaintiff has that motive, that tips the scale slightly in the plaintiff's favor. And then he just simply says if the employer can come forward with some other legitimate justification other than the at-will employment rule, that will tip the scales back in the favor of the employer. And that's why in the Blinka case, the effect on morale, the withdrawn from the rest of the workforce, is sufficient to meet that. Was that a trial case? Yes. Yes, that was a trial case. And so quick, I want to point out Hubbard, which we talk about extensively. Here's the elements in Hubbard that are the overriding powerful justification. The court says the burden does shift to the county to show an overriding justification for Hubbard's dismissal. The county argues that the dismissal was part of a reorganization of the Public Works Department. On the other hand, Hubbard's assert that his dismissal was in retaliation for preventing Manson from issuing a permit to build a new airport hotel. We therefore conclude that a question of fact also remains as to this element.  There's no threshold test that the court has to, no two-step that the court has to go through. And it's important in this case, the court was never asked to make that preliminary rule. The plaintiff didn't come in and say, I want you to rule as a matter of law that they can't bring this affirmative defense. We sat there with the expectation that we had to submit all of this to the jury. And here's where it's important. What I'm saying about the plaintiff never submitted a different proposal on this. And to now step forward, and you'll read the transcript in vain trying to find the plaintiff informing the court of this basis that it now challenges the instruction on. That the court failed to go through some procedure, some threshold procedure, that the plaintiff now thinks would have been appropriate. You were saying any justification is sufficient. What then is the purpose of the word overriding? Overriding what? I think there are cases showing that not every justification is legitimate, not every offered justification is a legitimate employer concern. And those are the cases that the plaintiff was citing. The employer in one case said, well, I ordered them to do something that's illegal, and they didn't do it, and I fired them for disobeying an order. And the court said that's just basically sophistry. That's not legitimate. If we're saying that there's a public policy against doing an illegal act, you can't fire somebody because they refuse to obey your order to do an illegal act. And, again, like the whole point of Loomis is that it was such a unique case because it wasn't a mixed motive case. That's the thing that's unique about Loomis. Nobody had any disagreement with what there was that had motivated the termination. And all there was was a competing balance here, and this was an instance, and there's instances in every area of law where if the right configuration of facts is there, the court can rule as a matter of law whether something can constitute an overriding justification or not. And there was nothing to dispute in that case other than the relative weight of the policies at stake. Excuse my time. Do you have half a minute for rebuttal if you have one thing you want to tell us? I have to say two things. One, we objected to 15 on the basis that it wasn't required by the law or the facts, and that came after a long session on the jury instructions in chambers. We offered number four, which contains all the elements that were appropriate for the case because we said the affirmative defense wasn't available in the case. Lynn's conflicts with Blinken. There's a lot of problems with Blinken because it wasn't really the issue of justification wasn't the issue that was argued before the Court. Thank you. If we have the rest of it, we will take it to the briefing. We appreciate your arguments. The case of Percy v. the Town of Wilkinson is submitted and we're adjourned for the morning.
judges: Hug, B Fletcher, McKeown